**THIRD DIVISION
DOYLE, P. J.,
REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**June 23, 2021**

# In the Court of Appeals of Georgia

A21A0010, A21A0011. COIN-OP SOLUTIONS, LLC v. METRO
CARROLLTON CORPORATION, et al.; and vice versa

DOYLE, Presiding Judge.

Coin-Op Solutions, LLC, the holder of a master license to operate coin operated amusement machines ("COAMs"), filed a petition in superior court to vacate an arbitration award entered by a Georgia Lottery Commission ("GLC") hearing officer/arbitrator pursuant to OCGA § 50-27-102 (d). The petition sought to vacate the arbitrator's determination that Coin-Op could not recover money allegedly owed according to contracts it had with Metro Carrollton Corporation, Glenwood C. Store, Inc.; Lovvorn Road Grocery, Inc.; Sony Enterprises (USA), Inc.; and Sony Investments, Inc. (collectively "Retail Locations"), which owned or operated certain retail locations where Coin-Op's machines were placed. The Retail Locations

answered Coin-Op's petition to vacate, filed a counterclaim to confirm the arbitrator's determination, and moved for summary judgment against Coin-Op's petition and in favor of their counterclaim. The superior court granted summary judgment in favor of the Retail Locations on Coin-Op's petition to vacate the award, and the court denied summary judgment as to the Retail Locations' counterclaim; the court also sua sponte granted summary judgment in favor of Coin-Op on the Retail Locations' counterclaim seeking to confirm the award.

In Case No. A21A0010, Coin-Op appeals from the rulings denying its petition to vacate the arbitration award, arguing that the superior court erred by (1) ruling that it lacked authority to vacate the award in this proceeding, and (2) failing to rule that the arbitrator's award was against the weight of the evidence. In Case No. A21A0011, the Retail Locations cross-appeal from the superior court's denial of their motion for summary judgment on their counterclaim, arguing that the court erred by concluding that it could not confirm the arbitration award in this proceeding. For the reasons that follow, we affirm in part in Case No. A21A0010 and vacate the judgment and remand in Case No. A21A0011.

The relevant record is undisputed, and to the extent that issues of law are presented, we review them de novo.[1] Coin-Op holds a master license for operating COAMs, and it entered into contracts with the Retail Locations to place COAMs in their locations for play by the public. Under the contracts, the Retail Locations and Coin-Op would evenly split the net collections after winnings were paid out. Winnings were paid by Retail Location employees from money in the machines, and Coin-Op employees periodically visited the COAM locations to collect its share of the net proceeds.[2] According to Coin-Op, the cash remaining in the machines typically was not sufficient to pay its 50 percent share, so it would seek reimbursement from the retail store itself; at times, the store did not pay the Coin-Op collector, who would instead create a receipt showing Coin-Op's uncollected share.

Eventually, a collection dispute arose between Coin-Op and the Retail Locations, and Coin-Op filed demands for arbitration pursuant to OCGA § 50-27-102

---

[1] See *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459, 459, 486 S.E.2d 684, 685 (1997) ("Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.").

[2] This practice allegedly preceded the implementation of an electronic collection system.

3

(d), seeking payment of various amounts allegedly owed by the Retail Locations under the contracts. The disputes were sent to arbitration and later consolidated; after reviewing the record from the consolidated cases (including deposition transcripts, affidavits, and documentary evidence), an arbitrator entered a final award in November 2018, denying Coin-Op any recovery on the ground that recovery was barred by the parties' conduct under OCGA § 13-4-4.[3]

Within ten days of that award, on November 12, 2018, Coin-Op filed a timely motion for review by the Chief Executive Officer ("CEO") of the GLC. The CEO took no action on the motion, and under GLC rules, the motion for review was deemed denied as of December 12, 2018.[4]

_____

[3] That Code section provides: "Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice."

[4] See *Coin-Op Solutions, LLC v. Norcross Convenience, LLC*, 357 Ga. App. 640, 640-641 (851 SE2d 226) (2020) (physical precedent only), quoting GLC Rule 13.2.5 (1) (b) (4) ("A Motion for Review shall be deemed denied if the President/CEO . . . fails to provide a decision to either grant or deny the motion within 30 days from receipt.") (punctuation omitted); *Ultra Group of Companies, Inc. v. S & A 1488 Mgmt., Inc.*, 357 Ga. App. 757, 758 (849 SE2d 531) (2020) ("The [CEO] failed to render a decision within 30 days, and thus, pursuant to GLC Rule 13.2.5 (1) (b) (4), affirmed the decision of the hearing officer."). We note that in *Norcross Convenience*, issued in November 2020, two judges of the three-judge panel

On January 16, 2019, Coin-Op then filed a petition in the Superior Court of Gwinnett County to vacate the arbitration award on the ground that the arbitrator manifestly disregarded the law.[5] The Retail Locations filed an answer denying Coin-Op's theory of recovery and asserting a counterclaim seeking to confirm the arbitration award; the same day, they moved for summary judgment against Coin-Op's petition and in favor of their counterclaim to confirm the award. Subsequently, the court entered a consent order transferring the proceeding to the Superior Court of Fulton County.[6] Upon reviewing the record, that court entered an order granting summary judgment to the Retail Locations on Coin-Op's petition to vacate the arbitration award, denying summary judgment to the Retail Locations on their counterclaim, and sua sponte granting summary judgment to Coin-Op on the Retail Locations' counterclaim seeking to confirm the arbitration award. In a footnote, the

---

concurred in the judgment only. Such an opinion lacks full precedential value because a majority of the panel did not fully concur. See Court of Appeals Rule 33.2 (a) (1).

[5] See generally OCGA § 9-9-13 (b) (5) ("The award shall be vacated on the application of a party who either participated in the arbitration or was served with a demand for arbitration if the court finds that the rights of that party were prejudiced by . . . [t]he arbitrator's manifest disregard of the law.").

[6] See generally OCGA 50-27-102 (d) (5) ("The decision of the [CEO] may be appealed to the Superior Court of Fulton County. . . .").

5

court also found that, to the extent that it had independent authority to reach the validity of the arbitration, there was no evidence authorizing the court to vacate the award on the ground that, as argued by Coin-Op, the arbitrator manifestly disregarded the law under OCGA § 9-9-13 (b) (5). Essentially, the superior court declined to vacate or confirm the award, pointing out in another footnote that it made "no conclusions as [to] the effect of the GLC's actions or decisions."

The superior court based its ruling on the statutory scheme governing contractual disputes between COAM master licensees and retail location owner/operators. Under OCGA § 50-27-102 (d), any such disputes must be referred to a hearing officer/arbitrator who hears disputes according to rules made by the GLC consistent with the Georgia Arbitration Code.[7] If a master licensee or retail location disagrees with the arbitrator's decision,

> [t]he decision of the hearing officer[/arbitrator] may be appealed to the chief executive officer or his or her designee. The chief executive officer shall not reverse a finding of fact of the hearing officer if any evidence supports the hearing officer's conclusion. The chief executive officer shall not reverse a conclusion of law of the hearing officer unless it was clearly erroneous, arbitrary, and capricious or exceeded the hearing officer's jurisdiction. The decision of the chief executive officer may be

---

[7] OCGA § 50-27-102 (d) (1)-(3).

6

appealed to the Superior Court of Fulton County, which court shall not reverse the chief executive officer's findings of fact unless it is against the weight of the evidence as set forth in Code Section 5-5-21, and the chief executive officer's legal conclusions shall not be set aside unless there is an error of law.[8]

In light of this statutory process, the superior court ruled that Coin-Op's petition to vacate the arbitration award was not the proper vehicle to challenge the award and that it lacked authority to vacate or confirm the arbitrator's final award.

Coin-Op filed a notice of appeal to this Court challenging the superior court's failure to vacate the arbitrator award, which appeal was docketed as Case No. A21A0010, and the Retail Locations filed a notice of appeal challenging the superior court's failure to confirm the award, which appeal was docketed as Case No. A21A0011.

*Case No. A21A0010*

1. Coin-Op contends that the superior court erred by finding that it lacked authority to vacate the arbitrator's award under OCGA § 50-27-102 (d). We disagree.

---

[8] OCGA § 50-27-102 (d) (5).

As noted above, the GLC regulates COAMs according to the statutory framework established in OCGA § 50-27-70 et seq.[9] Under that framework, "[t]he [GLC] shall have jurisdiction of *all disputes* between and among any licensees . . . relating in any way to any agreement involving coin operated amusement machines, distribution of funds, . . . [or] other claims against a subsequent master license holder or location owner. . . ."[10] This exclusive dispute resolution and appeal process is governed by OCGA § 50-27-102 (d).[11]

Here, Coin-Op properly initiated this dispute resolution process by seeking relief with a hearing officer/arbitrator pursuant to OCGA § 50-27-102 (d). However, when it received an adverse decision, which was then affirmed by operation of law

---

[9] See *Amusement Leasing, Inc. v. Ga. Lottery Corp.*, 352 Ga. App. 243, 243-245 (1) (834 SE2d 330) (2019) ("[T]he GLC … administers Georgia's statutory framework applicable to COAMs and COAM businesses. . . . There is created a body corporate and politic to be known as the [GLC,] which shall be deemed to be an instrumentality of the state, and not a state agency, and a public corporation.") (citations and punctuation omitted).

[10] (Emphasis supplied.) OCGA § 50-27-102 (d) (2).

[11] See *Amazing Amusements Group, Inc. v. Wilson*, 353 Ga. App. 256, 261 (835 SE2d 781) (2019) ("[T]he legislature authorized the GLC to establish the very intra-agency appeal process [at issue], and the statute creates this authority without limitation as to the exclusivity of the administrative remedy.").

by the failure of the CEO to act on Coin-Op's appeal of the arbitrator's award,[12] Coin-Op filed a petition to vacate the arbitration award, despite the clear statutory process established for appealing the award.

Instead of seeking to vacate the award, Coin-Op's proper remedy was to file an appeal under OCGA § 50-27-102 (d) (5). "[I]t is clear from the record that the dispute between Coin-Op, a master licensee, and [the Retail Locations] is governed exclusively by the GLC through implementing statutes and the GLC's rules and regulations[,] which establish how decisions are contested and appealed."[13] This is not a distinction without a difference. As noted by the superior court, arbitration confirmation proceedings and the GLC appeal process pertain to different records (the arbitration proceeding versus the full administrative record), and they apply different standards of review. For example, OCGA § 50-27-102 (d) (5) authorizes a superior court to reverse a factual finding if it is against the weight of the evidence under OCGA § 5-5-21 and to reverse a legal conclusion "[if] there is an error of law."

---

[12] See *S & A 1488 Mgmt., Inc.*, 357 Ga. App. at 758.

[13] *Norcross Convenience*, 357 Ga. App. at 644 (2) (physical precedent only), citing OCGA § 50-27-102 (d) (3) - (5).

9

By contrast, OCGA § 9-9-13 (b) (5) authorizes a superior court to vacate an arbitration award if the arbitrator manifestly disregarded the law.

> In the arbitration context, the concept of manifest disregard has never been the equivalent of . . . a misapplication of the law to the facts. It is a much narrower standard, requiring a showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it. Arbitrators must *deliberately ignore* applicable law to fall within the manifest disregard prohibition in OCGA § 9-9-13 (b) (5).[14]

Thus, with respect to Coin-Op's challenge to the GLC's denial of Coin-Op's motion for review of the arbitrator's award, its remedy was the procedure established in OCGA § 50-27-102 (d) (5) — appealing to the Superior Court of Fulton County.[15]

---

[14] (Footnotes and punctuation omitted; emphasis in original.) *Airtab, Inc. v. Limbach Co.*, 295 Ga. App. 720, 722 (2) (a) (673 SE2d 69) (2009).

[15] At oral argument, the parties debated whether the GLC's CEO's lack of action was a mere failure to grant a review that was essentially unreviewable due to a lack of factual findings or legal conclusions, or was instead an actual decision affirming (by operation of law) the arbitrator's written findings and conclusions. But the GLC rules are clear that the CEO's denial of a motion for review constitutes the "final GLC action and shall not be subject to further appeal within the GLC." https://www.gacoam.com/API/Documents/Document?documentID=255 (last visited June 2, 2021). Thus, the CEO's automatic denial here was a GLC action reviewable by the superior court pursuant to OCGA § 50-27-102 (d). See *S & A 1488 Mgmt., Inc.*, 357 Ga. App. at 758; *King Petro v. Ultra Group of Companies, Inc.*, 355 Ga. App. 503, 504 (844 SE2d 547) (2020) ("Because the CEO failed to decide the matter within 30 days, the appeal was deemed denied and the arbitrator's award was affirmed by operation of law.")

10

Accordingly, the superior court correctly concluded that the arbitration award was not properly before it for purposes of Coin-Op's challenge to its outcome, and we affirm the judgment denying Coin-Op's petition to vacate the arbitration award.[16]

*Case No. A21A0011*

2. In this appeal, the Retail Locations challenge the superior court's denial of their counterclaim to confirm the award. They argue that OCGA § 50-27-102 does not prevent the superior court from otherwise confirming the award because superior courts have statutory authority to confirm arbitration awards and reduce them to an enforceable judgment, and as a practical matter, they must be afforded some avenue for obtaining finality with respect to the result of the arbitration. We agree.

OCGA § 50-27-102 does not address confirmation of arbitration awards; rather, it provides the procedure for an aggrieved party to challenge an adverse result obtained in a GLC proceeding. That Code section also clarifies that the GLC rules must be consistent with the Georgia Arbitration Code, and both parties in this case agree that a superior court has authority to confirm arbitration awards made pursuant

---

[16] Compare *Norcross Convenience*, 357 Ga. App. at 644-645 (2) (physical precedent only) (vacating and remanding in a similar procedural posture because the petitioner did not name the GLC as a respondent).

11

to a GLC proceeding.[17] Under OCGA § 9-9-12, "[t]he court shall confirm an award upon application of a party made within one year after its delivery to [the party], unless the award is vacated or modified by the court as provided in this part." In light of the fact that the superior court expressly found no basis for vacating the award, and in light of our ruling in Division 1, the award of the arbitrator remains undisturbed. Under the resulting procedural posture, the Retail Locations have prevailed in their defense at arbitration and properly sought confirmation of the arbitration result.[18]

---

[17] Coin-Op argues that the arbitrator's award was against the weight of the evidence, invoking the standard articulated in OCGA § 50-27-102 (d) (5). But as explained in Division 1, the present appeal does not arise in that statutory context. It arose in the context of a counterclaim seeking to confirm an arbitration award pursuant to the superior court's authority under OCGA § 9-9-12. In both appeals before us, Coin-Op does not argue that the award was a result of a manifest disregard of the law, as it attempted to argue in the superior court.

[18] In so holding, we emphasize that our opinion only addresses the regular confirmation of an arbitration award after the GLC process has played out. This procedural posture is unusual in the sense that the aggrieved party has not pursued the GLC appeal process in the superior court but instead has challenged the arbitration itself. In this way, the case differs from other cases addressing the proper procedure for challenging the result of a GLC arbitration proceeding. Compare *Ultra Group of Companies v. Inam Intl., Inc.*, 354 Ga. App. 304, 305 (840 SE2d 708) (2020); *King Petro*, 355 Ga. App. at 504. For similar reasons, this cross-appeal presents issues not decided in *Norcross Convenience*, 357 Ga. App. at 645 (2) (physical precedent only) (addressing only the petition to vacate and holding that "the GLC should have been named as a respondent for any proceeding in the superior court that sought review of the GLC's actions as part of its statutory oversight of COAMs.").

Accordingly, we vacate the superior court's summary judgment rulings denying the Retail Locations' petition to confirm the award and remand for confirmation consistent with this opinion and the law of the case established by this case's procedural history.

*Judgment affirmed in part in Case No. A21A0010; judgment vacated in part and case remanded in Case No. A21A0011. Reese and Brown, JJ., concur.*